**64**

Steven GOODMAN, and the Steven
J. Goodman Revocable Living
Trust, Plaintiffs,

v.

Don WAUGH, Don Waugh and Asso-
ciates, Jim Dondich, and William
R.G. Smith, Defendants.

No. 92 Civ. 0805 (HB).

United States District Court,
S.D. New York.

April 3, 1995.

Simon S. Kogan New York City, for plain-
tiffs.

Don Waugh and Don Waugh and Associ-
ates pro se.

*OPINION AND ORDER*

BAER, District Judge: *

This nonjury trial came on to be heard
before me on January 20, 1995. Plaintiffs,
who supplied a short term loan to KTK
Holdings ("KTK"), a failed holding company,
bring this action to recover losses suffered as
a result of alleged fraudulent inducement by
defendants. Plaintiffs contend that defen-
dants deliberately provided them with false
and misleading information about KTK and
its principal officer, Jim Dondich. The com-
plaint asserts a common law claim and this
Court has jurisdiction by reason of diversity
of citizenship under 28 U.S.C. § 1332.[1] For
the reasons stated below, plaintiffs are
awarded $50,000.00 in damages.

**I. BACKGROUND**

In January and February of 1990, plain-
tiffs Steven Goodman, and the Steven J.
Goodman Revocable Living Trust ("Good-
man") and defendants Don Waugh and Don
Waugh and Associates ("Waugh") held a ser-

---

* Andrew Levy, a third-year student at New York
Law School, assisted in the research and prepa-
ration of this opinion.

1. According to the undisputed allegations of the
complaint, plaintiff Steven Goodman is a resi-
dent of the state of California and The Steven J.

Goodman Revocable Living Trust is a trust orga-
nized under the laws of the state of California.
Defendant Don Waugh is a resident of the state
of New York and Don Waugh and Associates is a
sole proprietorship wholly owned and operated
by Don Waugh.

ies of four telephone conversations, which plaintiffs tape recorded and introduced into evidence. During those calls, Waugh made numerous representations about his personal involvement in the management of and the financial stability of KTK. The gravamen of Goodman's complaint is that Waugh fraudulently induced him to provide a $50,000.00 bridge loan to Jim Dondich on behalf of KTK Holdings.

In these conversations, Waugh represented that his firm did investment banking for KTK Holdings, Pls.' Ex. 1 at 2, and was trying to raise one million dollars in short term bridge financing to "gear up" for KTK's new six million dollar contract with the City of Chicago, *id.* Waugh told Goodman that he had already secured $500,000.00 and that he would raise and transfer the other $500,-000.00 within 35 to 60 days. *Id.* at 3; Tr. at 18 (Goodman). In fact, Waugh had neither secured $500,000.00 nor did KTK have a contract with Chicago. Tr. at 45–46 (Waugh). Further, Waugh falsely represented that he had been conducting research on KTK for four to five months and that KTK would be structuring a ten million dollar bond issue to build a new plant in Detroit. Pls.' Ex. 1 at 2.

Goodman then relayed to Waugh that Jim Dondich of KTK asked Goodman to make a $100,000.00 bridge loan. Pursuant to this conversation, Goodman and Waugh agreed to each contribute $50,000.00, Pls.' Ex. 2 at 2, and that Goodman's transfer would be contingent on Waugh's first wiring his share, Pls.' Ex. 3 at 1. Waugh represented that there were insignificant risks involved in this transaction, explaining that he knew and worked closely with Jim Dondich and that he—Waugh—had his "fingers wrapped around" KTK. Pls.' Ex. 1 at 9–10.

Prior to transferring his money, Goodman telephoned Waugh in New York City and asked whether Waugh had wired $50,000.00 to KTK in Houma, Louisiana. Waugh told Goodman that he had wired it, Tr. at 18 (Goodman), and provided Goodman with wire confirmation numbers which, subsequent to Goodman's transfer to KTK, Goodman discovered to be false, Pls.' Ex. 4 at 1.

## II. DISCUSSION

### A. Common Law Fraud

Under New York common law, to prove fraud, a plaintiff must show (1) that there was a material, false representation, (2) made with knowledge of its falsity, (3) an intent to defraud (4) reliance, and (5) damage. *Kregos v. Associated Press,* 3 F.3d 656, 665 (2d Cir.1993) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 274 (2d Cir.1992)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *May Dep't Stores Co. v. Int'l Leasing Corp., Inc.,* 1 F.3d 138, 141 (2d Cir.1993); *see also Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987) (citing *Van Alen v. Dominick & Dominick, Inc.,* 441 F.Supp. 389, 403 (S.D.N.Y.1976), aff'd, 560 F.2d 547 (2d Cir.1977)). Plaintiffs bear the burden of proving fraud by clear and convincing evidence. *Katara,* 835 F.2d at 971; *Ajax Hardware Mfg. Corp. v. Industrial Plants Corp.,* 569 F.2d 181, 186 (2d Cir.1977).

Plaintiffs have met that burden in this case. The substance of the four recorded phone conversations and the testimony adduced at trial evidence a pattern of false representations relied on by plaintiffs and directed at inducing them to wire funds that defendants knew would never be recovered. Defendant Waugh represented that he was the investment banker for KTK, that he had done due diligence on the company, that KTK had secured a lucrative six million dollar contract with the City of Chicago, that he was putting his own accountants and attorneys into the company, that he had raised $500,000.00, and that he had put in an additional $50,000.00 of his own money. The evidence demonstrates that none of this ever occurred.

### B. Defendants' failure to benefit from the fraud

While not raised by the defendants, this Court notes that Waugh need not have benefitted financially in order to be liable for plaintiffs' damages. Although according to the testimony, Waugh received no money for inducing plaintiffs to lend money to KTK, the fact remains that Waugh intended that his

representations induce the action taken by plaintiffs. *Cf. A.I. Credit Corp. v. Hartford Computer Group,* 847 F.Supp. 588 (N.D.Ill. 1994) (noting no viable defense against a fraud claim due to the fact that defendants did not benefit from their fraudulent statements, which had induced plaintiffs to make loans to third parties). Judgement will be entered for plaintiffs in the amount of $50,000.00.

SO ORDERED.